## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT T. SMITH,** | : | |
| **Plaintiff** | : | **No. 1:CV-03-0898** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **KENNETH KYLER and** | : | |
| **RAY EARLSTON** | : | **Document Electronically Filed** |
| | : | |
| **Defendants** | : | |

### BRIEF IN SUPPORT OF DEFENDANTS'
### <u>MOTION FOR SUMMARY JUDGMENT</u>

Respectfully submitted,

**D. MICHAEL FISHER**
**Attorney General**


By:    S/ Jason C. Giurintano
**JASON C. GIURINTANO**
**Deputy Attorney General**
**I.D. No. 89177**

**Office of Attorney General**          **SUSAN J. FORNEY**
**Civil Litigation Section**            **Chief Deputy Attorney General**
**15th Floor, Strawberry Square**       **Chief, Litigation Section**
**Harrisburg, PA  17120**

                                        **Counsel for Defendants**

**Date: October 14, 2003**

## TABLE OF CONTENTS

Table of Authorities ........................................................................ iii, iv

Statement of the Case ........................................................................ 1

Statement of Facts ............................................................................ 2

Questions Presented .......................................................................... 2

    A.    Are Defendants Entitled to Judgment as a Matter of Law Because Plaintiff's Right to Free Exercise of His Religious Beliefs is Reasonably Accommodated at SCI Huntingdon? ...................................................................... 2

    B.    Should the Complaint be Dismissed Because Its Claims are Barred by the Applicable Statute of Limitations? ..................... 3

    C.    Should the Complaint be Dismissed Because RLUIPA Does Not Apply in This Case? ....................................................... 3

Argument ......................................................................................... 3

    A.    The Undisputed Material Facts Reveal That Defendants Are Entitled to Judgment as a Matter of Law With Respect to All Claims Because Plaintiff's Religious Beliefs Are Reasonable Accommodated at SCI Huntingdon. ...................................................................... 4

    B.    The Undisputed Material Facts Reveal That Defendants Are Entitled to Judgment as a Matter of Law With Respect to All Claims Because the Action is Barred by the Applicable Limitations Period .................................................. 10

    C.    RLUIPA Does Not Apply in This Case. ...................................... 13

        1.    RLUIPA Exceeds Congress' Spending Power .................. 14

        2.    RLUIPA Exceeds Congress' Commerce Power ................. 18

3.      The DOC Policy Does Not Substantially Burden
        Plaintiff's Right to Free Exercise of His Religious
        Beliefs. ................................................................................ 19

Conclusion ..................................................................................... 22

Attachment

Certificate of Service

# TABLE OF AUTHORITIES

## CASES

Africa v. Commonwealth, 662 F.2d 1025 (3rd Cir. 1981) ........................................9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)............................................3

Bell v. Wolfish, 441 U.S. 520 (1979) .........................................................................4

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..........................................................3

Cleveland Policy Management System Corp., 526 U.S. 795 (1999) .........................4

DeHart v. Horn, 227 F.3d 47 (3d. Cir. 2000) ............................................................5

District, 694 F. Supp. 125 (W.D. Pa. 1988)..............................................................10

Equimark Commercial Financial Co. v. C.I.T. Financial Serv. Corp., 812
F.2d 141 (3d. Cir. 1987).............................................................................................4

Hankins v. Temple University, 829 F.2d 437 (3d Cir. 1987)....................................3

Jensen v. Snellings, 636 F. Supp. 1305 (E.D. La 1986) .........................................10

Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119 (1977) ...................5

O'Lone v. Shabbaz, 482 U.S. 342 (1987) ..................................................................4

Deary v. Three Un-named Police Officers, 746 F.2d 185 (3d Cir. 1984) ...............12

Pell v. Procunier, 417 U.S. 817 (1974).....................................................................4

Pennhurst State School and Hospital v. Halderman, 451 U.S. 1 (1981) ................14

Pittsburgh, 764 F.2d 188 (3d Cir. 1985)..................................................................10

Rust v. Sullivan, 500 U.S. 173 (1991).....................................................................16

Sandutch v. Muroski, 684 F.2d 252 ........................................................................10

Small v. Lehman, 98 F.3d 762 (3rd Cir.1996).........................................................19

Smith v. CGU, 179 F. Supp. 2d 425 (M.D. Pa. 2001)...............................................3

South Dakota v. Dole, 483 U.S. 203 (1987) ...........................................................13

States v. Kubrick, 444 U.S. 111 (1979) ..................................................................10

Turner v. Safley, 48 U.S. 78 (1987).........................................................................15

Turner v. Safley, 482 U.S. 78 (1987)..........................................................................5

United States v. Lopez, 514 U.S. 546 (1995) ..........................................................18

Werner v. McCotter, 49 F.3d at 1480 (10th Cir. 1996) ...........................................19

## STATUTES

42 U.S.C. §1983 .....................................................................................................1, 10

42 U.S.C. § 2000cc-1 ..............................................................................................13

Fed.R.Civ.P. 56(c)......................................................................................................3

Fed.R.Civ.P. 56(e)......................................................................................................3

## STATEMENT OF THE CASE

This is a civil rights action brought pursuant to 42 U.S.C. §1983, alleging that Defendants violated the Religious Land Use and Institutionalized Persons Act of 2000[1] ("RLUIPA"), as well as Plaintiff's First and Fourteenth Amendment rights by refusing to accommodate his religious beliefs while in prison.  Plaintiff is Robert T. Smith ("Smith"), a *pro se* inmate currently incarcerated in the State Correctional Institution at Huntingdon ("SCI-Huntingdon").   Defendants are Reverend Ray Earlston, Jr., a protestant chaplain at SCI-Huntingdon, and Kenneth Kyler, Superintendent of SCI-Huntingdon.

Plaintiff, a believer in Rastafarianism, alleges that Defendants have denied him the freedom to exercise his religion by failing to provide a separate Rastafarian worship service.  (*See* Statement of Material Facts, "SMF" at ¶3).  He further alleges that he is denied exercise of his religious beliefs because Rastafarians are not permitted to pray as a group.  (Id.).  Plaintiff seeks injunctive relief requiring one Rastafarian group worship service per week, led by either a live Rastafarian prayer leader, or a taped[2] Rastafarian prayer leader.  (Id.).

Plaintiff filed the complaint on May 27, 2003, and Defendants answered the complaint on August 27, 2003.  On October 3, 2003, Defendants filed a Motion for

---

[1] Pub.L. 106-274, Sept. 2000, 114 Stat. 803.

Summary Judgment and Statement of Material Facts.  This brief is filed in support of that Motion.

## STATEMENT OF FACTS

A statement of material facts was appended to defendant's motion for summary judgment and, in the interest of brevity, will not be repeated here.  The defendant respectfully calls this Court's attention to that statement, and will reference pertinent facts therefrom at appropriate points in this brief.

## QUESTIONS PRESENTED

A.    **ARE DEFENDANTS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFF'S RIGHT TO FREE EXERCISE OF HIS RELIGIOUS BELIEFS IS REASONABLY ACCOMMODATED AT SCI- HUNTINGDON?**

**Suggested Answer:  Yes.**

B.    **SHOULD THE COMPLAINT BE DISMISSED BECAUSE ITS CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS?**

**Suggested Answer:  Yes.**

C.    **SHOULD THE COMPLAINT BE DISMISSED BECAUSE RLUIPA DOES NOT APPLY IN THIS CASE?**

**Suggested Answer:  Yes.**

---

[2]  Plaintiff does not indicate in his Complaint if he is seeking an audio or videotape.

# ARGUMENT

## Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. Celotex Corp., 477 U.S. at 323. An issue is genuine if the evidence before the court is such that a reasonable jury could return a verdict in favor of the non-moving party. Hankins v. Temple University, 829 F.2d 437, 440 (3d Cir. 1987). The substantive law applicable to the claim serves to identify which facts are material for purposes of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party has demonstrated that there is no genuine issue of material fact, the nonmoving party must go beyond the allegations in his or her pleading, and "set forth specific facts showing that there is a genuine issue for trial." Celotex Corp, 477 U.S. at 324; Smith v. CGU, 179 F.Supp.2d 425, 428 (M.D. Pa. 2001); Fed.R.Civ.P. 56(e). In addition, judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of his or her case as to which he or she has the burden of

proof. Cleveland Policy Management Sys. Corp., 526 U.S. 795, 804 (1999);

Equimark Commercial Financial Co. v. C.I.T. Financial Serv. Corp., 812 F.2d 141,

144 (3d. Cir. 1987).

**A.    THE UNDISPUTED MATERIAL FACTS REVEAL THAT DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO ALL CLAIMS BECAUSE PLAINTIFF'S RELIGIOUS BELIEFS ARE REASONABLY ACCOMMODATED AT SCI- HUNTINGDON.**

Although Plaintiff is incarcerated, the Supreme Court has made clear that "convicted persons do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabbaz, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L.Ed 2d 282 (1987). Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates. See Pell v. Procunier, 417 U.S. 817, 822-23, 94 S. Ct. 2800, 41 L.Ed. 2d 495 (1974). Thus, an inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Id. at 822.

Specifically, prisoners' exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials, such exercise poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment." Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541 (1977). In Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed 2d 64 (1987), the Supreme Court articulated the standard for reviewing a prison regulation challenged on constitutional grounds. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 84.

While the standard of review as outlined by Turner requires a court to respect the security, rehabilitation and administrative concerns underlying a prison regulation without requiring proof that the regulation is the least restrictive means of addressing those concerns, it also requires a court to give weight in assessing the overall reasonableness of regulations to the inmate's interest in engaging in constitutionally protected activity. DeHart v. Horn, 227 F. 3d. 47 (3d. Cir. 2000).

The Third Circuit Court of Appeals in DeHart v. Horn, reviewed the Turner reasonableness standard and assessed the overall reasonableness of prison

regulations[3] by weighing four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. Second, a court must consider whether inmates retain alternate means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests. Id. at 51, citing Turner.

In this case, Defendants assert that DOC's decision to not provide separate prayer services for Rastafarians does not deny Plaintiff a reasonable opportunity exercise his religious beliefs. Against the backdrop of the need to enforce order, stability and security within State correctional institutions, the DOC has traditionally accommodated religions with significant inmate following to the greatest extent possible. Ecumenical services for major faith groups, which represent the whole body of a particular faith group, are celebrated at state prisons. Chaplains who are staffed at the prison are able to serve the needs of each faith groups denomination or sect.[4]

---

[3]In DeHart, an inmate alleged that his First Amendment rights were violated by prison officials' refusal to accommodate his request for a special diet.

[4]Major faith groups within the Department's institutions include Catholic, Jewish, Protestant and Native American. While there may be distinct denominations or

Satisfying the first, third and fourth prongs of <u>Tuner</u>, The DOC has provided legitimate penological interests concerning the accommodation of Plaintiff's religious requests.   In his declaration, Reverend Torma explains that separate services for individual religious denominations or sects would have an adverse impact on prison administration by increasing the likelihood for disruption to the order, stability and security of the facility.  (SMF at ¶6).

Torma states that multiplying the number of denominations, sects or groups who believe they are entitled to separate religious services at the Department's twenty-six institutions would stretch scarce prison resources because of the added space, personnel and money that would be required to provide for additional congregations of prison inmates in a manner consistent with prison security. (SMF at ¶7).  She explains that multiplying the number of sects or groups entitled to separate services would have an adverse impact upon security at the prisons because additional correctional employees would be needed to provide security at each additional service.  (SMF at ¶8).  Providing separate services would also have an adverse impact upon space at the prisons because additional areas would need to be designated within facilities, that are already short of space, to conduct multiple

---

sects within the major faith groups, no separate services or chaplains are provided for those groups.  For example, for those inmates who are members of Protestant faiths, such as the Lutheran, Baptist or Methodist denominations, religious needs

services.   (SMF at ¶9).   Finally, providing secure separate services for each denomination or sect of a religious group at twenty-six State operated prisons would have an adverse financial impact upon the Department.  (SMF at ¶10).

In Torma's opinion, separate services for each religious group would require an inordinate amount of resources to accommodate them in a manner consistent with prison security.  (SMF at ¶10).  Here, The DOC has articulated legitimate penological concerns regarding the accommodation of inmates' religious beliefs, including providing one ecumenical Rastafarian service and one Rastafarian chaplain at SCI-Huntingdon.

Turning to the second prong of Turner, Reverend Joanne Torma, DOC Administrator of Religious Services, has articulated the alternate means available to Plaintiff in exercising his religious beliefs.  Reverend Torma states that SCI-Huntingdon accommodates inmates of the Rastafarian faith.   (SMF at ¶11). Plaintiff is free to have a Rastafarian chaplain visit him at the prison, provided the chaplain meets the Department's requirements for visitors.  (SMF at ¶12).  Plaintiff is also permitted to have religious books and materials sent to him, as long as they meet the criteria of the inmate publication review, governed by DOC

are serviced by a Protestant chaplain and ecumenical Protestant services are available to them.  (SMF at ¶19).

Administrative Directives.  Plaintiff is also permitted to pray in his cell.  (SMF at ¶13).

Moreover, Plaintiff is permitted to follow the tenets of the Rastafarian faith as long as those practices are consistent with the Department's directives and policies and do not disrupt the order, stability and security of the prison.  (SMF at ¶14).  All Rastafarians at SCI-Huntingdon have reasonable opportunities to exercise their religious beliefs measured against the backdrop of a prison setting.

Security issues are paramount in correctional institutions, and are "especially important in prison free exercise cases because the bleakness of institutional life may create an incentive to falsely allege religious motivation for acts otherwise forbidden by prison authorities."  <u>Africa v. Commonwealth</u>, 662 F.2d 1025, 1030 (3rd Cir. 1981).  Courts should not second guess prison administrators in their decision in establishing policy as to the number and types of inmate religious services they are able to safely and securely provide to inmates incarcerated within their facility.  While prison regulations cannot interfere with religious belief and opinion, they may necessarily interfere with religious practices.  In this case, Plaintiff is permitted to exercise his religious beliefs and alternate means are available to him in expressing his beliefs.  The Court should hold that Plaintiff's right to exercise his religion has been accommodated at SCI-Huntingdon.

**B.    THE UNDISPUTED MATERIAL FACTS REVEAL THAT DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO ALL CLAIMS BECAUSE THE ACTION IS BARRED BY THE APPLICABLE LIMITATIONS PERIOD.**

It is now well established that claims brought in Pennsylvania pursuant to 42 U.S.C. §1983 are subject to a two year limitations period.  Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir. 1985), cert. denied, 474 U.S. 950.  Under federal law, a §1983 claim accrues when the plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action.  Deary v. Three Un-named Police Officers, 746 F.2d 185, 193 (3d Cir. 1984); Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982) (per curiam).  The date when "the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant," triggers the limitations period even if the plaintiff did not realize the defendant's conduct was tortious or unlawful.  Somers v. Bradford Area School District, 694 F.Supp. 125, 136 (W.D. Pa. 1988), citing, inter alia, United States v. Kubrick, 444 U.S. 111 (1979).  The trigger date for the running of the limitations period coincides with the occurrence of facts or events which would cause a reasonable person to inquire whether she has suffered a legal wrong.  Jensen v. Snellings, 636 F.Supp. 1305, 1309 (E.D. La 1986) citing Cook v. Avien, Inc., 573 F.2d 685 (1st Cir. 1978).

In the present case, Plaintiff has been continuously incarcerated at SCI-Huntingdon since 1999. (SMF at ¶15). According to Assistant Superintendent Diana Baney, from the inception of Plaintiff's incarceration at SCI-Huntingdon, through the time he filed this Complaint on May 27, 2003, separate Rastafarian worship services, taped Rastafarian prayer leaders and Rastafarian group prayers have never been permitted. (SMF at ¶16).

Plaintiff acknowledges in his Complaint that as early as 1995, he became aware of the fact that Rastafarian worship services, and taped Rastafarian prayer leaders, have never been permitted at SCI-Huntingdon. (SMF at ¶17). Furthermore, on August 15, 2000, Plaintiff filed a grievance with SCI-Huntingdon officials, complaining about the lack of a separate Rastafarian worship services, and asking for one Rastafarian worship service per week. (SMF at ¶18). Therefore, Defendants contend that Plaintiff was well aware of his alleged constitutional deprivation for more than two (2) years prior to the filing of the present complaint.

Defendants also assert that if the Plaintiff believes his religious freedom is not being reasonably accommodated, the "trigger date" for the §1983 statute of limitations would have been the date on which Plaintiff was first aware that he may have been suffering from this alleged constitutional deprivation. Under federal law, a §1983 claim accrues when the plaintiff knows, or has reason to know, of the

injury that constitutes the basis of the action.   Deary v. Three Un-named Police Officers, 746 F.2d 185, 193 (3d Cir. 1984)

Plaintiff states in his Complaint that he was aware of this deprivation since 1995, which is approximately eight (8) years prior to the time he filed his complaint on May 27, 2003.  Therefore, Plaintiff's Complaint makes clear the fact that as early as 1995, Plaintiff was "aware of facts or events which would cause a reasonable person to inquire whether she has suffered a legal wrong."

At the latest, Plaintiff believed that he was suffering a violation of his constitutional rights by the date he filed his first grievance on the matter, August 15, 2000.  Even with that more advanced date, a complaint filed on May 27, 2003 would still be untimely.  Therefore, Plaintiff's claims are barred by the statute of limitations.

## C.   RLUIPA DOES NOT APPLY IN THIS CASE[5].

RLUIPA, 42 USC §§ 2000cc to 2000cc, provides, in pertinent part:

---

[5]  A copy of the recent decision in the U.S. Middle District case of Williams v. Bitner, et al., (CV-01-2271)(Connor, J) is attached.  In Williams, Judge Connor held the RLUIPA was not violative of the Establishment Clause, Tenth Amendment, Eleventh Amendment and Spending Clause.  In the present case, Defendants, in order to preserve these issues for appeal, will make similar constitutional arguments which the Defendants made in Williams.  Moreover, Defendants in the present matter make an argument under the Commerce Clause which was not present in the Williams case.

42 USC § 2000cc-1.  Protection of religious exercise of institutionalized persons.

(**a**) General rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(**1**) is in furtherance of a compelling governmental  interest; and

(**2**) is the least restrictive means of furthering that compelling governmental interest.

(**b**) Scope of application.

This section applies in any case in which--

(**1**) the substantial burden is imposed in a program or activity that receives federal financial assistance.

RLUIPA does not apply in this case because the Act is an unconstitutional exercise of Congress=power under both the Spending and Commerce Clauses.  In addition, RLUIPA violates the Separation of Powers Doctrine as well as the Tenth Amendment.  Moreover, the DOC has not placed a "substantial burden" on Plaintiffs' exercise of his claimed Rastafarian beliefs, and Defendants have shown a compelling interest in not providing separate group prayer services for Rastafarians.

## 1.    **RLUIPA Exceeds Congress=Spending Power**

The Spending Clause gives Congress the authority to influence matters it cannot directly regulate through its enumerated powers.  Mindful of this broad power, yet recognizing its limitations, the Supreme Court, in <u>South Dakota v. Dole</u>, 483 U.S. 203 (1987), identified four restrictions on Congress=s power to legislate

under the Spending Clause: (1) the spending power must be in pursuit of the general welfare;[6] (2) conditions on the funds must be unambiguous; (3) the conditions of the federal funds must be reasonably related to the particular national program; and (4) the Spending Clause regulation must not violate other, independent constitutional provisions. Id. at 207-208. If Congress exceeds any one of these restrictions, it has improperly invoked the Spending Clause.

RLUIPA=s Spending Clause provision exceeds Congress=power in three ways. First, RLUIPA=s conditions are ambiguous. While the Defendants concede the DOC receives federal grant money, neither RLUIPA itself, nor any of the federal moneys received by the DOC, have affirmatively apprised the DOC of its option to accept or to decline federal funds in order to avoid RLUIPA=s preferred rights for prisoners. Furthermore, the subject is not addressed in RLUIPA in a Aclear voice@or otherwise. See Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981). Accordingly, there can be no consent if a state is unaware of the conditions.

Moreover, even if exact language had been included in the any federal funds received by DOC prior to their acceptance, RLUIPA=s least restrictive means

---

[6]The requirement that Congress act to serve the general welfare is for all practical purposes no limitation at all. The level of deference is such that it is questioned whether it is judicially enforceable restriction at all. Dole, supra. at 208 n.2.

standard is too ambiguous to allow for an informed choice, and Ait is difficult [for states] to know what is meant by a requirement that they operate in the least restrictive setting.@ Pennhurst, supra. at 24-25.  This is particularly true in the prison setting, where such an amorphous standard is unworkable because Aevery administrative judgment would be subject to the possibility that some court somewhere could conclude that it has a less restrictive means of solving the problem at hand.@ Turner v. Safley, 48 U.S.  78, 89 (1987).  RLUIPA=s standard is so subjective that it is, in reality, no standard at all, and could not be Afairly be said that the state could make an informed choice.@ See Pennhurst, supra. at 24-25.

Second, Congress has exceeded its Spending Clause power as RLUIPA violates the relatedness requirement that federal funds must be sufficiently related to the condition imposed.  As Dole mandates, conditions attached to federal funds must bear some relationship to the purpose of the federal funding and must have a direct relationship to the specific federal program.  Id. at 207.

Dole involved conditions attached to highway safety funds that were directly related to highway safety and conditions intended to limit drunk driving.  Those conditions were both related to the general purpose of the funds and logically connected to further that purpose.  Here, the connection between the purpose of the federal funding received by the DOC, and the condition that those programs not impose restraints on inmates=religious practices, is not apparent.  In support of this

15

argument, Defendants submitted a declaration evincing that while the DOC does receive federal financial assistance, none of those funds have any relation to religion or impose any condition regarding prisoners=religious rights.  (SMF at ¶20).

Moreover, the Supreme Court, in a post <u>Dole</u> decision regarding the relatedness requirement, upheld the Spending Clause condition because Congress controlled only those matters directly related to the project funded and did not restrict the recipient=s discretion in other areas.  <u>Rust v. Sullivan</u>, 500 U.S. 173, 196-199 (1991).  In <u>Rust</u>, the Court held that conditions placed on Title X funding for abortions were constitutionally permissible, noting that Aunconstitutional conditions involve cases where the Government has placed a condition on the *recipient* of the subsidy rather than on a particular program or service, thus effectively prohibiting the *recipient* from engaging in protected conduct outside the scope of the federally funded program.  <u>Id</u>. at 197.  RLUIPA runs afoul of the Court=s holding in <u>Rust</u> by attempting to place conditions on recipients of federal funds and control matters not related to the specific federal funding.

Third, RLUIPA offends state sovereignty using federal funds as coercion, or a direct regulation of areas of traditional State concern.  Administration of State prisons has always been regarded as a state function and one of the most important of States=traditional roles.  The question here is whether Congress, in the guise of

Spending Clause legislation, can achieve indirectly, what it cannot constitutionally achieve directly.  AIf the Spending Clause is simultaneously interpreted to permit Congress to seek otherwise forbidden regulatory aims indirectly through a conditional offer of federal funds to the states, the notion of a federal government of enumerated powers will have no meaning.@ See Baker, *Conditional Federal Spending After Lopez*, 95 Colum. L. Rev. 1911, 1920 (1995).

As Justice O€onnor noted in Dole, A[i]f the spending power is limited only by Congress=notion of the general welfare, the reality, given the vast financial resources of the Federal Government, is that the Spending Clause gives power to Congress to tear down the barriers, to invade the states=jurisdiction and become a parliament of the whole people, subject to no restrictions other than those that are self imposed.. . . this of course, . . . was not the Framers=plan and is not the meaning of the Spending Clause.@ Dole, 483 U.S. at 217. (O€onnor, J., dissenting).

Conditions on the receipt of federal funds always must bear some relationship to the purpose of the federal funding; otherwise, the spending power could provide the means to give the federal government limitless authority over the States.  RLUIPA is nothing more than an attempt by Congress to invade sovereignty by using its power under the Spending Clause as an enabling provision

for the otherwise unconstitutional exercise of federal power over areas of traditional State concern.

### 2.    RLUIPA Exceeds Congress=Commerce Power

Congress=alternate authorization for RLUIPA was the Commerce Clause. See ' 3(b)(2).  Here too, Congress exceeded its commerce powers by attempting to regulate more than its power permits.  Pursuant to the Commerce Clause, Congress may regulate three types of activities: channels of interstate commerce, Ainstrumentalities of@and Athings in@interstate commerce and intrastate activities that Asubstantially affect@interstate commerce.  United States v. Lopez, 514 U.S. 546, 558-559 (1995).  In Lopez, the Court found the Gun -Free School Zone Act to be an unconstitutional use of Congress=Commerce Power, because Congress failed to demonstrate that possession of guns in schools substantially affected interstate commerce. Id.  at 567.  The Court in Lopez refused to pile inference upon inference in order to find a substantial effect. Id.

State prison officials=regulations of state prisoners religious conduct certainly does not fall within the purview of commerce.  Here, Plaintiff challenges the DOC policy which does not permit a separate Rastafarian prayer service.  It is hard to imagine how Congress=Commerce Power can reach this type of non-commercial, inmate activity that occurs entirely inside prisons that are located entirely within the state boundaries.  Any attempt to connect a separate Rastafarian

worship service, and its relationship to interstate commerce would be ludicrous.  In this case RLUIPA is unconstitutional as exceeding Congress=power under the Commerce Clause.

**3.     The DOC Policy Does Not Substantially Burden
       Plaintiff=Right to Free Exercise of His Religious Beliefs**.

While Defendants do not concede that RLUIPA is a valid exercise of Congress=power under the Spending and Commerce Clauses, the Tenth Amendment, or the Separation of Powers doctrine, RLUIPA does not apply in this case because DOC policies do not substantially burden Plaintiff=right to free exercise of his religion in violation of RLUIPA.

Courts have held that to exceed the substantial burden threshold concerning free exercise in the prison setting, government regulations must: 1) significantly inhibit or constrain conduct or expression that manifests some central tenet of a person=s religious belief; 2) meaningfully curtail a prisoner=s ability to express adherence to his or her faith; or 3) deny a prisoner reasonable opportunity to engage in those activities that are fundamental to a prisoner=s religion.  See Small v. Lehman, 98 F. 3rd 762, 766 (3rd Cir.1996) (applying the substantial burden test under RFRA) *quoting* Werner v. McCotter, 49 F.3d at 1480 (10th Cir. 1996).

Arguably, Plaintiff fails the first prong in establishing that his religious beliefs have been substantially burdened or that his First Amendment rights have

been violated.  Defendants contend that Plaintiff has not demonstrated with any proof that separate group prayer services are central tenets of the Rastafarian faith. Furthermore, Plaintiff has not demonstrated that a taped prayer leader is central to the Plaintiff's Rastafarian faith.

The second and third prongs of the substantial burden test are whether the action curtails a prisoner=s ability to express adherence to his faith and whether the action denies a prisoner reasonable opportunity to engage in those actions that are fundamental to his religion.  Here again, Plaintiff fails to meet the criteria that his religious beliefs are substantially burdened.  Plaintiff is free to have a Rastafarian chaplain visit him at the prison, provided the chaplain meets the Department's requirements for visitors.  (SMF at ¶12).  Plaintiff is also permitted to have Rastafarian religious books and materials sent to him, as long as they meet the criteria of the inmate publication review, governed by DOC Administrative Directives.  Plaintiff is also permitted pray in his cell.  (SMF at ¶13).  Therefore, Plaintiff has the edibility to express adherence to his faith, and is not being denied actions that are "fundamental" to his religion.

Defendants contend that Plaintiff has the right to freely exercise his purported religious beliefs or the tenants of his faith have not been substantially burdened because he has been presented with a reasonable opportunity to engage in activities which he perceives as fundamental to his religion.

20

Finally, the DOC actions in this matter are designed to address a compelling interest, as dictated by RLUIPA.  The SCI-Huntingdon prison officials have articulated a compelling governmental interest in regulating prayer services of their inmates.  As noted above, this requirement is compelling in the prison context, because of the need to guard against the potential that inmates may use religion as a manipulation or pretext to breach security or to gain privileges to which they ordinarily would not be entitled.

Individuals incarcerated in state correctional facilities are there because they have been convicted of crimes.  The need to enforce order, security, discipline and peace is paramount within a prison.  Here, the DOC is taking necessary steps to assure society, those working in correctional facilities, and other prisoners, that the facility in which they are housed is safe, secure and operated in an orderly manner. For these reasons, the compelling interest standard is met.

## <u>CONCLUSION</u>

For the foregoing reasons the Court should grant Defendants' Motion for

Summary Judgment

**Respectfully submitted,**

**D. MICHAEL FISHER**
**Attorney General**


**By:**     **/s/ Jason C. Giurintano**
**JASON C. GIURINTANO**
**Deputy Attorney General**
**I.D. No. 89177**


**Office of Attorney General**          **SUSAN J. FORNEY**
**Civil Litigation Section**            **Chief Deputy Attorney General**
**15th Floor, Strawberry Square**       **Chief, Litigation Section**
**Harrisburg, PA  17120**
**(717) 787-9711**

                                        **Counsel for Defendants**

**Date:  October 14, 2003**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT T. SMITH,           :
           **Plaintiff**    :     **No. 1:CV-03-0898**
   **v.**              :
                :     **(Judge Kane)**
**KENNETH KYLER and**   :
**RAY EARLSTON**      :     **(Electronically Filed)**
                :
      **Defendants** :

## CERTIFICATE OF SERVICE

I, Jason C. Giurintano, Deputy Attorney General for the Commonwealth of

Pennsylvania, Office of Attorney General, hereby certify that on October 14, 2003,

I caused to be served a true and correct copy of the foregoing document entitled

Brief in Support of Defendants' Motion for Summary Judgment by depositing

same in the United States Mail, first-class postage prepaid to the following:

Robert Smith, AS-2769
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112


                           **/s/ Jason C. Giurintano**
                           **JASON C. GIURINTANO**
                           **Deputy Attorney General**